IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | 1:10-CR-379 |
| | ) | |
| GERALD EUGENE MICHAEL, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

The defendant, Gerald Michael, seeks a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). In 2011, a jury convicted Mr. Michael, a repeat offender then 73 years old, of five serious felonies, including crimes involving an attempt to kill a witness against him. The Court sentenced Mr. Michael to 240 months in prison after taking into account all relevant factors, including his age and poor health. Mr. Michael, now 84 years old, asks for a sentence reduction to time based on his medical conditions and his age. Even assuming those facts constitute extraordinary and compelling circumstances, the § 3553(a) factors do not support a sentence reduction. The motion will be denied.

### I. Procedural History

After a jury trial, Mr. Michael was convicted of five felony offenses: distribution of oxycodone; two counts of possession of a firearm by a felon; solicitation and attempt to kill a witness; and conspiracy to kill a witness. *See* Doc. 77 (jury verdict); Doc. 110 (judgment). In January 2012, the Court sentenced him to 240 months imprisonment followed by three years of supervised release. *See* Doc. 110 at 1–3.

In May 2020, Mr. Michael filed a motion for compassionate release, Doc. 169, which the Court denied without prejudice because Mr. Michael had not exhausted administrative remedies. Doc. 170. In October 2022, Mr. Michael filed a renewed motion, Doc. 173, which he amended in January 2023. *See* Docs. 179–180; Text Order 01/16/2023. The Court ordered development of the record and set a briefing schedule. *See* Doc. 178; Text Order 01/16/2023. Briefing is now complete.[1]

## II. Crimes of Conviction and Sentencing

Over the course of several months from November 2009 through March 2010, CS1, a confidential source for the North Carolina State Bureau of Investigation (SBI), bought oxycodone and stolen firearms from Mr. Michael. Doc. 136 at ¶¶ 7–10.[2] Mr. Michael was born in 1938 and was 71 years old at the time. *Id.* at 3.

In October 2010, a federal grand jury returned a four-count indictment against Mr. Michael charging him with these drug and firearms offenses. *Id.* at ¶ 12; Doc. 1. Mr. Michael was arrested. Doc. 136 at ¶ 12. While in custody, Mr. Michael called a second confidential source, CS2, telling CS2 that he thought CS1 had caused him to be arrested. *Id.* at ¶ 13. Mr. Michael's wife later contacted CS2, gave CS2 the real name of CS1, and told CS2 that Mr. Michael said he, CS2, would "know what to do." *Id.*

---

[1] Counsel for Mr. Michael has filed a number of supplements to the motion, some of which contain factual assertions unsupported by evidence. *See*, *e.g.*, Docs. 199, 191. The rules of evidence do not apply, so the Court has given these assertions appropriate consideration. But it does not accept all of these assertions as facts. Many appear to be based on statements by Mr. Michael, who has questionable credibility.

[2] The Court adopted the presentence investigation report, Doc. 136, after striking some information in the Offense Conduct section. Doc. 137 at 1. In the final report, the stricken information has been redacted. *See*, *e.g.*, Doc. 136 at ¶ 7.

2

Mr. Michael was released from custody on November 9, 2010, under pretrial supervision. *Id.* at ¶ 12. Soon thereafter, CS2 met with Mr. Michael and Ryan Morris, Mr. Michael's grandson, in person. *See id.* at ¶ 14. At Mr. Michael's direction, CS2 and Mr. Morris investigated CS1's whereabouts. *Id.*

CS2 reported this information to law enforcement. *Id.* In recorded conversations with Mr. Michael and Mr. Morris thereafter, Mr. Michael told CS2 that he wanted CS1 killed because it would delay or possibly ruin the government's case against him. *Id.* at ¶ 18. Mr. Michael also talked with CS2 about using Mr. Michael's "Mexican connections to facilitate" the murder. *Id.* (cleaned up). Specifically, Mr. Michael, Mr. Morris, and CS2 discussed using a Mexican hit man to murder the informant, and "it was said that the Mexicans know how to cut the bodies up and put them in stuff that does away with bodies." *Id.* at ¶ 19. Mr. Michael then "stated that would be the best way." *Id.* Mr. Michael gave CS1's location to CS2 and told CS2 to coordinate the murder with "the Mexican." *Id.* at ¶¶ 23–24.

In December 2010, a federal grand jury returned a superseding indictment against Mr. Michael charging him with the original firearm and drug offenses as well as new charges for solicitation and conspiracy to kill CS1. Doc. 13. Mr. Morris was also indicted on charges related to the plan to murder CS1. *See id.*

Mr. Michael pled not guilty, and his case went to trial in August 2011. The jury unanimously found Mr. Michael guilty of all counts.[3] Doc. 77.

---

[3] Although the superseding indictment charged Mr. Michael with six counts, Doc. 13, the government did not proceed on count four at trial. Doc. 136 at ¶ 3.

3

At sentencing, the Court found that Mr. Michael's guideline range was 210 to 262 months, based on a total offense level of 35 and a criminal history category of III. Doc. 137 at 1. The Court sentenced Mr. Michael to 240 months in prison, followed by three years of supervised release. Doc. 110 at 2–3. In doing so, the Court explicitly noted that it was "not going to go all the way to the top" of the guideline range due to Mr. Michael's age and health problems. Doc. 111 at 31. But the Court denied Mr. Michael's request for a downward variance, finding that would be an insufficient sentence because of the severity of the offense, his criminal history, and the fact that his age and health problems "did not slow him down in committing these crimes." *Id.* at 30–31.

### III. Health Conditions and Medical History

When Mr. Michael was sentenced, he was suffering from significant health problems, including serious heart problems, Doc. 136 at ¶¶ 91, 93, lumbago, sciatica, hypertension, and mixed hyperlipidemia. *Id.* at ¶ 94. He also had a history of high blood pressure, high cholesterol, *id.* at ¶ 87, hernias, *id.* at ¶¶ 88, 90, blood clots, *id.* at ¶ 90, and bladder cancer. Doc. 179-3 at 13. Mr. Michael was taking a number of medications, including Aricept for early dementia. *See* Doc. 136 at ¶¶ 92, 96, 98. While awaiting sentencing, Mr. Michael had a CT scan that revealed a mass on his pancreas and small nodules in his lungs. *Id.* at ¶ 95.

Mr. Michael continues to have health issues in prison. In December 2018, Mr. Michael was hospitalized for atrial fibrillation, chest pain, and anemia, Doc. 179-2 at 8–13, and in July 2021 he was hospitalized again for severe chest pain related to atrial fibrillation. *See id.* at 38–40, 44; Doc. 179-3 at 8. If he has dementia, it has not affected his ability to communicate clearly in writing with BOP about his concerns and complaints. *See, e.g.,* Doc. 191 at 1-2.

To reduce the risk of strokes associated with atrial fibrillation, *see* Doc. 179-3 at 15, Mr. Michael takes anticoagulant medication. *See, e.g.,* Doc. 179-2 at 7 (October 2018 medical report noting long-term and current use of anticoagulants). These medicines have potential sides effects, including bleeding through the urinary tract. Doc. 179-3 at 15; *see also id.* at 20. At least as early as November 2020, Mr. Michael began complaining to BOP about this side effect, *see* Doc. 179-2 at 17; Doc. 179-3 at 8 (August 2021); *id.* at 14 (December 2021); *id.* at 20 (February 2022); Doc. 188 at 17, 21–22 (February 2023), which means he can't take his anticoagulation medication for short periods. Doc. 179-3 at 14; *see also id.* at 20.

In August 2021, the BOP had Mr. Michael evaluated by a cardiologist, who suggested that Mr. Michael might be a good candidate for a Watchman device and that a referral for an evaluation at Duke would be appropriate. *Id.* at 8.[4] This device might allow him to get off the anticoagulant medication. *Id.* at 11. Mr. Michael was eventually evaluated at Duke for a Watchman device in May 2022, and the doctors recommended the surgery. Doc. 179-4 at 13. As best the Court can tell from the medical records, he has not yet had the surgery, as Duke has postponed and then cancelled the procedure pending other tests. *Id.* at 27 (reflecting surgeon needed to reschedule); *id.* at 33 (reflecting cancellation by Duke pending CT).

Mr. Michael regularly reports severe and chronic back pain to medical staff and has since at least October 2018. *See, e.g.*, Doc. 179-2 at 7; *id.* at 16–17 (November 2020); Doc. 179-3 at 1 (August 2021); Doc. 179-4 at 32 (July 2022); Doc. 188 at 17 (February 2023). At least occasionally he uses a wheelchair. *See* Doc. 179-3 at 25. An October 2020 CT scan of

---

[4] The August 25, 2021, report by the cardiologist does not identify his specialty, Doc. 179-3 at 8, but in a later report by a BOP physician, he is identified as a cardiologist. *Id.* at 11.

5

his spine revealed "severe spinal stenosis," "degenerative facet hypertrophy," and "[s]evere multilevel degenerative spondylosis." Doc. 179-2 at 15.

Mr. Michael has a history of bladder cancer, *see e.g.*, *id.* at 27, and his medical records show regular follow-up and testing. *See e.g.*, Doc. 179-4 at 30. A doctor recently recommended that he have a bladder stone removed. Doc. 188 at 61.

Mr. Michael has not presented any testimony from any medical professional that the medical care he is receiving falls below the standard of care or does not meet constitutional standards.

## IV. Other Relevant Facts

Mr. Michael is now 84 years old. *See* Doc. 136 at 3 (showing Mr. Michael's birth date as April 27, 1938). He is incarcerated at FCI Butner (Low). *Find an Inmate*, FED. BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited Mar. 31, 2023). He is presently scheduled for release in December 2027. *Id.*

Mr. Michael committed the underlying offenses when he was over 70 years old. *See* Doc. 136 at 3–4. His criminal history, which began with misdemeanor assaults when he was 23, *id.* at ¶¶ 61–62, 64, is significant. He has gone from bootlegging, *id.* at ¶¶ 66–67, to trafficking in stolen goods, *id.* at ¶ 68, to dealing marijuana and methaqualone, *id.* at ¶¶ 69, 71, cocaine, *id.* at ¶¶ 70, 72, and, most recently, oxycodone and stolen firearms. *Id.* at ¶¶ 7–11. Since age 24, he has constantly been in and out of prison and has not been out of prison or off supervision for longer than approximately seven years. *See id.* at ¶¶ 63–72. He committed the drug and firearm crimes here just months after release from prison on a cocaine charge and

6

while on supervised release, *see id.* at ¶¶ 7–10, 72, and arranged to kill a witness while on pretrial release for the drug and firearms crimes. *See id.* at ¶¶ 12–24.

While in prison serving his current sentence, Mr. Michael has completed a few education courses. Doc. 182 at 1. He has not received any disciplinary incident reports. *Id.*

Mr. Michael has never had stable and consistent employment at a level sufficient to support himself lawfully. *See* Doc. 136 at ¶¶ 108–116. Before his arrest in 2010, Mr. Michael was unemployed. *Id.* at ¶ 108.

Due to his age and medical complications, Mr. Michael does not propose to work if released. Instead, his release plan is to live with his sister in Mocksville, North Carolina. *See* Doc. 173 at 2; Doc. 182 at 2. He states through counsel that "[h]is family will meet his medical and financial needs" and that he is expected to have health insurance and SSI benefits. Doc. 173 at 2. According to the Probation Office, this is an acceptable release plan. Doc. 182 at 2.

### V. Analysis

Courts do not have unfettered jurisdiction or discretion to modify criminal sentences. *See United States v. Goodwyn*, 596 F.3d 233, 235 (4th Cir. 2010) ("The law closely guards the finality of criminal sentences against judicial change of heart." (cleaned up)). A court may modify a sentence only when a provision in the Federal Rules of Criminal Procedure or a statute expressly permits it to do so. *See* 18 U.S.C. § 3582(c). Section 3582(c)(1)(A), often called the "compassionate release" provision, is one such statutory provision.

For a sentence reduction under § 3582(c)(1)(A) to be appropriate, the movant must satisfy the administrative exhaustion requirement, when invoked by the government. *See*

7

*United States v. Muhammad*, 16 F.4th 126, 130 (4th Cir. 2021). The government has not invoked it here. *See* Doc. 183 at 10 n.1.

Section 3582(c)(1)(A) also requires that extraordinary and compelling reasons merit a reduction in sentence, that the reduction is consistent with any applicable policy statements issued by the Sentencing Commission, and that the relevant § 3553(a) sentencing factors do not counsel against early release. *See United States v. McCoy*, 981 F.3d 271, 275 (4th Cir. 2020); *United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). Even if the court finds that extraordinary and compelling reasons support release, the court in its discretion may deny a defendant's motion after balancing the applicable § 3553(a) factors. *High*, 997 F.3d at 186.

### A. Extraordinary and Compelling Reasons

Mr. Michael asserts that his age and health conditions, for which he contends he is not receiving adequate care, constitute extraordinary and compelling circumstances. He also points to his heightened risk of severe COVID-19.

Age, severe health issues, inadequate medical care, and COVID-19, together or on their own, may all be relevant factors in evaluating whether extraordinary and compelling reasons exist under § 3582(c)(1)(A). *See, e.g.*, *United States v. Norris*, 458 F. Supp. 3d 383, 386 (E.D.N.C. 2020); *Woodard v. United States*, 469 F. Supp. 3d 499, 502–03 (E.D. Va. 2020) (collecting cases); *United States v. Malone*, 57 F.4th 167, 175 (4th Cir. 2023); *United States v. Elem*, No. 17-CR-124, 2020 WL 4262271, at *2 (D. Md. July 24, 2020); *United States v. Beck*, 425 F. Supp. 3d. 573, 580–82 (M.D.N.C. 2019).

Mr. Michael's concerns about COVID-19 do not rise to extraordinary and compelling circumstances. The BOP reports that at FCI Butner (Low) four inmates and no staff members

8

are currently positive for COVID-19 and that 4,087 inmates and 979 staff members have been vaccinated since the start of the pandemic. *COVID-19 Cases*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus (last visited Mar. 31, 2023). Mr. Michael received the COVID-19 vaccine in 2021. Doc. 179-3 at 34. The current record does not establish extraordinary and compelling circumstances based on COVID-19. Nor is there evidence from any medical professional that the medical care Mr. Michael receives falls below constitutional standards or is negligent.

Still, Mr. Michael is elderly and suffers from several health conditions. While the Sentencing Commission has not yet issued a policy statement applicable to compassionate release motions filed by defendants under the First Step Act, the old policy statement applicable to motions brought by the BOP provides persuasive, though not binding, support for Mr. Michael's claims. *See United States v. McCoy*, 981 F.3d 271, 282 n.7 (4th Cir. 2020). Under that statement, extraordinary and compelling circumstances exist when "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served as least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13 cmt. 1(B). Mr. Michael is 84 years old and has served approximately 12 years of his twenty-year sentence, some 60%.

For the purposes of this motion, the Court will assume that Mr. Michael is experiencing a serious deterioration in his physical health because of the aging process and that his age and health, along with the time he has already served, constitute extraordinary and compelling circumstances.

9

## B. Sentencing Factors

In evaluating a compassionate release motion, the statute requires courts to "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). If the § 3553(a) factors weigh against release, courts have discretion to deny the motion, regardless of the existence of extraordinary and compelling circumstances. *High*, 997 F.3d at 186.

The sentencing factors in Mr. Michael's case weigh against release. A jury convicted Mr. Michael of drug and firearms charges, as well solicitation to commit murder and conspiracy to kill or attempt to kill a witness. These are serious crimes. Mr. Michael committed the drug and firearm charges while on federal supervised release for two other drug crimes, *see* Doc. 136 at ¶ 72, and he attempted to have a witness murdered while he was on pretrial release. *See id.* at ¶¶ 12–24. He was not deterred from committing new crimes while on supervised release, nor while on pretrial release awaiting trial on serious charges.

Mr. Michael's criminal history, briefly summarized earlier, also weighs against a sentence reduction. His criminal record began at age 23, *see id.* at ¶ 61, and continued over the next fifty years with only brief spells of avoiding contact with law enforcement or the courts. *Id.* at ¶¶ 62–72. In his forties Mr. Michael served approximately six and a half years in prison for drug crimes, *id.* at ¶ 70, and in his sixties he served another six and a half years for more drug crimes, followed by half a year on home confinement. *Id.* at ¶ 72. Even while he was on supervised release for his latest drug conviction, he again began selling illegal drugs. As the Court noted at his sentencing hearing, "very soon after he gets out of serving a very long prison sentence, he's back in the [drug] business." Doc. 111 at 31.

10

Nor did Mr. Michael's age and health problems deter him from criminal activity. He was over 70 when he committed the current offenses. *See* Doc. 136 at 3 (noting age and birth date). In the decade before he committed these crimes, he said he had suffered from "back pain and dizzy spells," "degenerative changes in the spine," *id.* at ¶ 89, atrial fibrillation, cardiovascular disease, hypertension, heartburn, and hyperlipidemia. *Id.* at ¶ 91. He had also had hernia surgery, a blood clot in his leg, and a staph infection on his back. *Id.* at ¶ 90. While his health conditions have gotten worse while in prison, that was to be expected given his age and the nature of his health problems, and the Court took his health and age into account at sentencing. If he is released from prison, he is likely to return to criminal conduct, as he always has in the past despite his health issues and his age. *See* 18 U.S.C. § 3553(a)(2)(B).

Mr. Michael has served just over 12 years of his 20-year sentence. *See* Doc. 183-1 at 3. This is significantly less than even the bottom of his guideline range, which was 210 months (or 17 and a half years). *See* Doc. 137 at 1; 18 U.S.C. § 3553(a)(4)(A). Reducing his sentence to time served would not reflect the seriousness of his offense, provide just punishment, or show respect for the law. *See* 18 U.S.C. § 3553(a)(2)(A). Nor would it adequately protect the public, 18 U.S.C. § 3553(a)(2)(C), given that Mr. Michael has a track record of committing serious crimes over the course of his long life, including soon after release from prison and while under supervision.

The Court appreciates that Mr. Michael has had no disciplinary infractions over the more than twelve years he has been incarcerated, *see* Doc. 191-1 at 8, and has taken a few education courses in prison. *Id.* at 3. But his minimal rehabilitation efforts, combined with

his age and health problems, do not outweigh his criminal history, the seriousness of the offense, the need for deterrence, and the need to protect the public.

## VI. Conclusion

Mr. Michael is serving a lengthy prison sentence for serious crimes he committed in 2009 and 2010, when he was over 70 years old and in poor health. Even assuming that his age and severe health conditions constitute extraordinary and compelling reasons, the § 3553(a) factors weigh against relief in the Court's evaluation and discretion, and a sentence reduction is not appropriate.

It is **ORDERED** that the defendant's motion for compassionate release, Doc. 173, as amended, Docs. 179–180, is **DENIED**.

This the 4th day of April, 2023.

_____
UNITED STATES DISTRICT JUDGE